IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

MARA FORLOINE,

                         Plaintiff,

v.                                CIVIL ACTION NO.   3:23-0450

JEFFREY H. COBEN, M.D.,
Interim Cabinet Secretary of the West Virginia Department
of Health and Human Services, in his official capacity only, and
CYNTHIA BEAN,
Deputy Commissioner of the Bureau of Medical Services,
in her official capacity only, and
AETNA BETTER HEALTH OF WEST VIRGINIA,

                         Defendants.

**MEMORANDUM OPINION AND ORDER**

       Plaintiff Mara Forloine's Motion for Temporary and Preliminary Injunctive Relief (ECF No. 6) was **GRANTED** by Court Order on July 26, 2023. ECF No. 29. The following Memorandum Opinion expands upon the Order, explaining the Court's reason for granting the Motion.

**I. BACKGROUND**

       Plaintiff is a West Virginia Medicaid recipient diagnosed with gender dysphoria. Compl. ¶ 7, ECF No. 1. Defendants Jeffery H. Coben, M.D. and Cynthia Beane are sued only in their official capacities as representatives of the West Virginia Department of Health and Human Resources ("DHHR") and DHHR's Bureau for Medical Services ("BMS"), respectively. *Id*. ¶¶ 8-11. Defendant Aetna Better Health of West Virginia ("Aetna") is a private company which

contracts with DHHR to act as a managed care organization ("MCO") providing medical benefits to certain West Virginia Medicaid recipients, including Plaintiff. *Id*. ¶¶ 12-14.

On December 23, 2022, Aetna denied Plaintiff's request for pre-approval of four surgical procedures recommended by her doctors to treat her gender dysphoria. *Id*. ¶ 18. Plaintiff appealed within Aetna's appeals system (pursuant to 42 C.F.R. § 438.402(a)) and was denied again on January 17, 2023. *Id*. ¶ 19. Accordingly, Plaintiff requested a fair hearing appeal to DHHR's Board of Review, pursuant to 42 U.S.C. § 1396a(3). *Id*. ¶¶ 20-21. On March 14, 2023, Board of Review State Hearing Officer Todd Thorton held that DHHR may not deny coverage of three of the four procedures "as cosmetic" because Plaintiff had "established the medical necessity of the surgical procedures." *Id*. ¶ 35; Exhibit 4, ECF No. 1-4. The fourth procedure was denied as specifically not covered under Provider Manual Chapter 519.24. *Id*. In response, DHHR filed a purported appeal at the West Virginia Intermediate State Court of Appeals, pursuant to West Virginia Code §§ 9-2-13 (repealed effective May 23, 2023); 29A-5-4; 51-11-4(b)(4).

Contending this appeal was illegal, Plaintiff filed suit in this Court on June 23, 2023, and motioned for temporary and preliminary injunctive relief on June 28, 2023. ECF No. 6. Her Motion seeks a preliminary injunction "compelling Defendants to implement the DHHR Board of Review decision upholding Plaintiff's right to Medicaid pre-approval for three medically necessary surgical procedures." Mem. Supp. Pl.'s Mot. at 1, ECF No. 7. Defendants responded, arguing variously that: (1) the Court lacks subject matter jurisdiction to exercise "appellate review" over the Board decision; (2) the Court should abstain pursuant to *Rooker-Feldman*, *Younger*, or *Burford*; (3) Plaintiff is seeking a disfavored "mandatory injunction" which would impermissibly change the status quo; (4) the Medicaid provisions Plaintiff seeks to have enforced do not confer a private right of action; (5) the "single state agency" Medicaid requirement does not prevent the

Intermediate Court review; (6) Plaintiff has not shown a violation of her procedural or substantive due process rights; (7) Plaintiff has not shown a likelihood of suffering irreparable harm in the absence of preliminary relief; and (8) the balance of equities and public interest disfavors relief. *See* ECF Nos. 13 & 14.

The Court heard oral argument on the Motion on July 26, 2023. Accordingly, the matter has been fully briefed and is ripe for resolution.

## II. LEGAL STANDARD

In deciding whether to issue a preliminary injunction, the Court recognizes that it "is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief pendente lite of the type available after the trial." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345 (4th Cir. 2009), *vacated*, 130 S. Ct. 2371 (2010), *reinstated in part*, 607 F.3d 355 (4th Cir. 2010) (citations omitted). "Granting the ultimate relief requested, even temporarily, at an early point in the case, often prior to the issues even being joined in the pleadings, seems rightly reserved for only the most compelling of cases." *Dewhurst v. Century Aluminum Co.*, 731 F. Supp. 2d 506, 514 (S.D. W. Va. 2010). In order to obtain a preliminary injunction, a party must establish four elements: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citation omitted). As such, the party seeking to obtain a "preliminary injunction must demonstrate by a clear showing that, among other things, it is likely to succeed on the merits at trial." *Dewhurst*, 731 F. Supp. 2d at 515 (internal quotation marks and citations omitted).

### III. DISCUSSION

Not only have Defendants argued that Plaintiff does not meet the standard for a preliminary injunction, but they assert that this Court does not have jurisdiction to hear this case at all. The Court will consider the jurisdictional issues as a threshold matter, and then turn to the preliminary injunction standard below.

#### A. Subject Matter Jurisdiction

Federal district courts may exercise subject matter jurisdiction under 28 U.S.C. § 1331 when a case or controversy arises under federal law. Ms. Forloine has invoked this jurisdiction, asserting that the instant controversy arises under her right to a fair hearing under 42 U.S.C. § 1343(a) and § 1396a(a)(3) of the Medicaid Act. Her Complaint and Motion ask this Court to determine whether her fair hearing rights have been violated, pursuant to the Medicaid Act and related federal regulations. *See* Compl. ¶¶ 5, 56, 58-59 61-62; Mem. Supp. Pl.'s Mot. at 10-13 (discussing Plaintiff's theory as to how Defendants' actions violated her fair hearing rights). In response, Defendants argue that this is a smokescreen, and that Ms. Forloine is actually seeking appellate review of the Board decision by this Court. DHHR Defs.' Resp. at 4-5; Def. Aetna's Resp. at 5.

The Court disagrees. Ms. Forloine has adequately alleged a controversy arising under federal law, namely, her right to a fair hearing under the Medicaid Act. She does not assert, for example, that the Board decision was incorrect or invalid. She does not request that the Court review the underlying administrative record. Nor does she premise her requested relief upon a reconsideration of any of the issues argued before the Board. Rather, she asserts that Defendants' behavior in the wake of the Board decision violated her rights under the Medicaid Act and requests related relief. The Court finds that this is sufficient to invoke its subject matter jurisdiction under 28 U.S.C. § 1331.

**B. Abstention Arguments**

Defendants are positive that the Court should abstain from hearing this controversy, arguing three different forms of abstention are applicable. DHHR Defs.' Resp. at 5-9; Def. Aetna's Resp. at 5. The Court disagrees.

First, the DHHR Defendants argue that the Court should refrain from deciding this case as "there is an ongoing state judicial proceeding implicating important state interests." DHHR Defs.' Resp. at 5-7 (citing *Younger v. Harris*, 571 U.S. 37 (1971)). *Younger* abstention applies when a court injunction would stay or enjoin a pending state proceeding which is either criminal, quasi-criminal, or "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 96 (4th Cir. 2022) (quoting *Younger*, 571 U.S. at 78-79, 81). "[I]f the case falls into one of the three settled categories, courts should go on to determine if federal involvement will in fact put comity at risk, but if the case does not, courts need go no further, they can properly entertain their federal-question jurisdiction." *Jonathan R. v. Justice*, 41 F.4th 316, 329 (4th Cir. 2022) (citing *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 81 (2013)). While there is a pending state civil proceeding in this case, it cannot be characterized as "quasi-criminal." Nor does an appeal of a Medicaid eligibility determination implicate the state court's ability to perform its judicial functions. Accordingly, *Younger* abstention is inapplicable.

Second, all three Defendants have argued that *Rooker-Feldman* doctrine impedes Ms. Forloine's suit, as this Court lacks appellate jurisdiction over the Board decision. DHHR Defs.' Resp. at 4-5; Def. Aetna's Resp. at 5. The Court disagrees. *Rooker-Feldman* doctrine "strips federal courts of subject-matter jurisdiction when 'state-court losers complain[] of injuries caused by state-court judgments' in district courts." *Jonthan R.*, 41 F.4th at 339 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005)). Most obviously, Ms. Forloine is not

a "state-court loser"—she won her appeal to the Board. She is not asking this Court to review any of the substantive issues or administrative procedure employed by the Board. Simply put, because Plaintiff is not seeking review of the of the Board decision, the Court finds that *Rooker-Feldman* is inapplicable.

*Burford* abstention involves the rare situation in which a federal court may abstain from exercising jurisdiction "when the availability of an alternative, federal forum threaten[s] to frustrate the purpose of a state's complex administrative system." *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) (citing *Texas Railroad Commission. Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)). Defendant has cited *Tsoras v. Manchin*, 431 Fed. App'x. 251 (4th Cir. 2011), which found abstention appropriate where Plaintiff had a gambling license dispute and a state appeals system in which he could make his arguments. But while *Tsoras* involved a state license in an area "at the heart of the state's police power," a state Medicaid system is federally approved and regulated. *See id*. at *3. Federal courts often hear Medicaid related disputes despite extant state appellate systems. *See, e.g.*, *Fain v. Crouch*, 618 F. Supp. 3d 313, 334 (S.D.W. Va. 2022) (hearing Medicaid coverage dispute despite plaintiff's failure to first exhaust state administrative appeals). Accordingly, the Court declines to abstain pursuant to *Burford*.

### C. Preliminary Injunction

Finding no reason why it should not consider the merits of Ms. Forloine's case, the Court turns to the preliminary injunction analysis. To reiterate, to obtain a preliminary injunction a party must establish four elements: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citation omitted).

### a. Likelihood of Success on the Merits

Ms. Forloine's case turns on whether DHHR's appeal to the Intermediate Court is appropriate under the cooperative state and federal Medicaid scheme. For the reasons articulated below, the Court finds that under federal law and the state Medicaid Plan, DHHR's appeal to the Intermediate Court of the Board decision is very likely illegal and in violation of Ms. Forloine's fair hearing rights. Accordingly, Ms. Forloine has demonstrated a sufficient likelihood of success on the merits.

"Medicaid is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals." *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990). States which choose to participate in the cooperative scheme must comply with the requirements of Title XIX of the Social Security Act ("Medicaid Act"), 42 U.S.C. § 1396 *et seq.*, and with regulations promulgated by the Secretary of the United States Department of Health and Human Services ("HHS"), at 42 C.F.R. Parts 430-456. Each state must "provide for the establishment or designation of a single State agency to administer or to supervise the administration" of its Medicaid program, 42 U.S.C. § 1396a(a)(5), a command which is known as the "single state agency requirement." *See, e.g.*, *K.C. ex rel. Africa v. Shipman*, 716 F.3d 107, 112 (4th Cir. 2013). "If other State or local agencies or offices perform services for the Medicaid agency, they must not have the authority to change or disapprove any administrative decision of that agency, or otherwise substitute their judgment for that of the Medicaid agency with respect to the application of policies, rules, and regulations issued by the Medicaid agency." 42 C.F.R. § 431.10(e)(3).

Medicaid state plans are required to provide a fair hearing opportunity to beneficiaries who are subject to adverse benefit determinations by MCOs. 42 C.F.R. §§ 431.220(a) & (b); 438,

Subpart F. West Virginia's approved plan designates DHHR's Board of Review as having "the authority to conduct all fair hearings and issue final decisions." Ex. 6 – West Virginia State Plan at 2, ECF No. 6-6. When a Medicaid beneficiary requests a fair hearing, the designated agency must usually take "final administrative action" within 90 days of the filing that request. 42 C.F.R. § 431.244(f)(1). Under 42 C.F.R. § 438.424(a), if a fair hearing officer reverses a decision denying services that were not furnished while the appeal was pending, the MCO "must authorize or provide the disputed services promptly and as expeditiously as the enrollee's health condition requires but no later than 72 hours from the date it receives notice reversing the determination." Neither the Medicaid statutory provisions nor the implementing regulations define "final administrative action."

Accordingly, Ms. Forloine asserts that the appeal of the Board decision has contravened the 90 day "final administrative action requirement," and that the decision authorizing the disputed services should have been implemented by Aetna within 72 hours. Reading this requirement in tandem with the "single state agency" requirement, Plaintiff asserts that DHHR's appeal of the Board's decision to the Intermediate Court violates federal law by allowing another state or local entity to override the decision. At least two state courts and the Fourth Circuit have held that subdivisions of a designated single state agency may not appeal fair hearing decisions. *See Shipman*, 716 F.3d at 115; *Forsyth Cnty. Bd. of Soc. Servs. v. Div. of Soc. Servs.*, 346 S.E.2d 414, 416-17 (N.C. 1986); *Wiesner v. Washtenaw Cnty. Community Mental Health*, 986 N.W.2d 629, 634 (Mich. 2022). In doing so, *Wiesner* stated that the subdivision at issue "[stood] in the shoes of" the single state agency—thus implying that the agency itself also could not have appealed. 986

N.W.2d at 634. However, Plaintiff has cited no authority holding that the single agency *itself* may not appeal a decision by a subdivision.[1]

Heedless of these interpretations of federal law, Defendants point out that West Virginia law authorizes appeals of Board decisions by "[a]ny party adversely affected or aggrieved by a final decision." W. Va. Code § 9-2-13. The Intermediate Court of West Virginia is a new adjudicative body, established in 2022 by West Virginia Code § 51-11-4. It has jurisdiction over appeals of "[f]inal judgments, orders, or decisions of an agency or an administrative law judge." W. Va. Code § 51-11-4(b)(4). As the Intermediate Court is a novel venue, it is unsurprising that it has yet to decide an appeal by any party of a Board of Review decision. However, prior to the advent of the Intermediate Court, appeals from the Board of Review were handled routinely by the Kanawha County Circuit Court. *See, e.g.*, *Foose v. Bowling*, No. 14-1312, 2015 WL 8232651 (W. Va. Dec. 7, 2015); W. Va. Code § 9-2-13. And yet, the Court is unaware of a case in which DHHR appealed to that Circuit Court. Nor do Defendants cite any case in which the DHHR previously appealed a fair hearing decision. Rather, all opinions issued by the Kanawha County Circuit Court deciding appeals from the Review Board were brought by Medicaid recipients of Board denials.

---

[1] While *Shipman* contains language which could be interpreted to the indicate the alternative, the Court rejects Defendants' attempts to do so, and finds that *Shipman*'s holding is a reiteration of *Forsyth* and *Wiesner* regarding the authority of state agency subdivisions. Defendants' point to this language: "Put simply, by directing states to designate a single Medicaid agency the decisions of which may not be overridden by other state and local actors, the requirement prohibits precisely what [local agency] aims to achieve in this appeal: to place itself in the driver's seat and call the shots on how the state's Medicaid program is to be administered in the face of a clearly contrary decision by" the single state agency not to appeal. 716 F.3d at 114-15. However, as Plaintiff points out, this involved an appeal by the beneficiary to the district court, which was then appealed again by the local agency (but not the state agency itself) to the circuit court. The case does not speak to the issue of whether the agency could have made the initial appeal to the court from the fair hearing decision and did not need to do so to reach a decision on the merits.

In reaching its decision, the Court considers all of the above, but primarily grounds its analysis in the structure of the Medicaid Act, its implementing regulations, and the cooperative state scheme. The Medicaid Act and accompanying regulations require participating states to designate a "single state agency" which has the authority to take "final administrative action" in response to fair hearing requests, and which cannot be overruled by "other State or local agencies" involved in the administration of Medicaid services. 42 U.S.C. § 1396a(a)(5); 42 C.F.R. §§ 431.10(e)(3), 431.244. The Fourth Circuit has characterized the import and intention of the "single state agency" scheme as reflecting the public policy rationales of efficiency and accountability. *Shipman*, 716 F.3d at 112. "In sum, the single state agency requirement represents Congress's recognition that in managing Medicaid, states should enjoy both an administrative benefit (the ability to designate a single agency to make final decisions in the interest of efficiency) but also a corresponding burden (an accountability regime in which that agency cannot evade federal requirements by deferring to the actions of other entities)." *Id*. (citing *San Lazaro Ass'n v. Connell*, 286 F.3d 1088, 1100–01 (9th Cir. 2002)).

While the required "final administrative action" is undefined in the Medicaid Act and accompanying regulations, the Court agrees with the Second Circuit's analysis and definition of the phrase as originally articulated in *Shakhnes v. Berlin*, 689 F.3d 244 (2012) and subsequently expanded upon in *Lisnitzer v. Zucker*, 983 F.3d 578 (2d Cir. 2020). In *Lisnitzer*, the Second Circuit held that "a Medicaid state agency's obligation to take 'final administrative action' within [the fair hearings] time limit, 42 C.F.R. § 431.244(f), requires the agency ordinarily to determine conclusively an applicant's Medicaid eligibility within that time limit." *Id*. at 584. In doing so, the *Liznitzer* Court considered both the New York State Medicaid Manual and the surrounding structure of the fair hearing process, finding that

-10-

> In light of the stated purpose of expedited hearings, § 431.224(a)(1), it seems obvious that the accompanying final administrative action must include an eligibility determination. Otherwise, the need for further proceedings would jeopardize the life or health of Medicaid applicants who qualify for such expedited hearings. Since 'final administrative action' has the same meaning in the context of ordinary fair hearings as in the context of expedited fair hearings, see § 431.244(f), it seems clear that such action must always include a final determination as to Medicaid eligibility, and hence that such determination must come, '[o]rdinarily, within 90 days from ... the date the agency receives a request for a fair hearing.' § 432.244(f)(1)(ii).

*Id*. at 585. Accordingly, the requirement that the state agency designated to hear fair hearings requests had the authority to issue "final administrative actions" meant that the agency's eligibility decisions could not be contravened by post-decision process if that process fell outside of the mandated 90-day time limit. *Id*. at 587. The Court agrees with this analysis and finds it equally applicable to the instant case: as the Board is the designated "single state agency" responsible for issuing "final administrative actions" within 90 days of a fair hearing request, its decisions must truly be "final" determinations of eligibility within the state Medicaid system. Otherwise, beneficiaries' fair hearing rights would be violated by the State's system of review.

Furthermore, West Virginia's State Plan and implementing Medicaid Manual also refer to the Board decisions in similar terms, as being "final" and "conclusive." *See* State Medicaid Manual at 2903.2(A), ECF No. 6-3; State Plan at 3, ECF No. 6-6. The Medicaid Manual indicates that the state agency has the "responsibility for carrying out the hearing" decision, as "[t]he hearing authority's decision is binding upon the State and Local agencies." State Medicaid Manual at 2903.2(A). Addressing the DHHR Defendants, the Manual states that they are "responsible for assuring that the [Board] decision is carried out promptly." *Id*. While the Manual is not a binding source of law, reading the "final administrative action" statutory and regulatory language in concert with the State's Plan and Manual demonstrates to the Court that the decision by the Board very likely must be a *final* administrative action by West Virginia's "single state agency" which

-11-

conclusively decides Medicaid eligibility on behalf of BMS and DHHR without the possibility of appeal by the state agency.

Even without this analysis, however, West Virginia's Medicaid Plan's structure demonstrates the absurdity of DHHR's appeal. The Plan designates BMS as the "single state agency" responsible for administering Medicaid. Ex. 6 – West Virginia State Plan, ECF No. 6-6. The Plan further indicates that BMS delegates authority to the Board of Review to "conduct all fair hearings and issue final decisions." *Id*. at 2. It requires BMS to "ensure every applicant and beneficiary is informed … of the fair hearing process" in front of the Board; "retain oversight of the State Plan" as it relates to the fair hearings process; "ensure compliance with all federal and state laws" by the Board; and institute "a process to monitor the entire appeals process, including the quality and accuracy of the final decisions made by the Board." *Id*. Accordingly, when the Board issued its decision as to Ms. Forloine's medical procedures, it was acting with authority delegated to it by BMS under BMS supervision. BMS is a division of DHHR. Therefore, the appeal by the DHHR Defendants to the Intermediate Court is *an appeal of their own decision*. Just as a suit by the District Court of the Southern District of West Virginia to the Fourth Circuit Court of Appeals of a District Court decision would be illogical and incognizable, so too is DHHR's current appeal to the Intermediate Court conceptually bizarre. Furthermore, if the Board's decisions were not decisions of DHHR or BMS, the State Plan's structure would violate the "single state agency" requirement imposed upon the State by federal Medicaid law. *See Shipman*, 716 F.3d at 112.

In order to obtain approval by the federal government to administer its Medicaid program, West Virginia was required to designate a single agency with the authority to issue final decisions on fair hearings appeals. West Virginia chose to imbue BMS with that authority and have BMS designate Board of Review as the subdivision with the ability to issue final decisions to fair

hearings requests by Medicaid beneficiaries. Therefore, BMS cannot now appeal its own holding on Ms. Forloine's fair hearing request without violating her rights under the Medicaid Act. Accordingly, the Court finds that Ms. Forloine has demonstrated a high likelihood of success on the merits of her suit.

### b. Subsidiary and Related Issues

As the appeal to the Intermediate Court is very likely illegal under the cooperative state and federal Medicaid scheme, many secondary arguments raised by the Defendants may be easily dispensed with by the Court.

### i. "Mandatory" v. "Prohibitive" Injunction

For one, Defendant argues that Ms. Forloine is requesting a strongly disfavored "mandatory injunction" which would disrupt the "status quo" between the parties. Def. Aetna's Resp. at 7-10. In determining whether an injunction would be "prohibitory" or "mandatory," the Court must look to the "status quo" to determine whether an injunction would "alter the status quo generally by requiring the non-movant to do something," or merely "aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 235 (4th Cir. 2014). When making this determination, the "status quo" is defined as the "last uncontested status between the parties." *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012). Defendant's argument relies on its assertion that the "status quo" between the parties is that Ms. Forloine's procedures have not been approved, and, therefore, a Court order enforcing the Board decision would be a change to that status quo mandating action from Aetna. *See* Def. Aetna's Resp. at 7-10. In Reply, Plaintiff asserts that the "status quo" between the parties is the "final administrative action" by the Board, and that her Motion seeks only to enforce that appeal, making it prohibitory rather than mandatory. Pl. Reply

to Def. Aetna at 3. Given the finding above that the appeal to the Intermediate Court is very likely illegitimate, the Court agrees with Plaintiff. Final means final, and neither Aetna nor DHHR may appeal the Board decision. Accordingly, Plaintiff's request that the Board decision be implemented does not alter the status quo between the parties.

### ii. Private Cause of Action

Next, the DHHR Defendants argue that Ms. Forloine's Counts I and III are brought under the "single state agency" provision of 42 U.S.C. § 1396a(a)(5), which courts have held does not imply a private cause of action. DHHR Defs.' Resp. at 11-12 (relying on *Graus v. Kaladjian*, 2 F. Supp. 2d 540 (S.D.N.Y 1998)). Plaintiff appears to concede that this provision does not confer a private right of action, insisting that "happily" she has brought suit under 42 U.S.C. § 1396a(a)(3) of the Medicaid Act—the fair hearing provision—which does confer such a right. Reply to DHHR Defs. at 5-6 (collecting cases). Ms. Forloine avers her right to a fair hearing is violated by the lack of final administrative action within 90 days of her request. *See id*. at 5-6. As discussed above when considering its subject matter jurisdiction, the Court agrees with Plaintiff—the injury she complains of stems from alleged violations of the fair hearings provision of the Act, and she may sue to enforce her rights under that provision. While analysis of her claims above implicates the "single state agency" provision, the injury to her is caused by a violation of the "final administrative action" requirement of 42 C.F.R. § 431.244(f)(1). Numerous courts have found an enforceable private right of action under 42 U.S.C. § 1983 for violations of §1396a(a)(3) fair hearing rights. *See, e.g.*, *Shakhnes*, 689 F.3d at 254-56; *Geann v. Hattaway*, 330 F.3d 758, 772-73 (6th Cir. 2003). Accordingly, the Court rejects this line of argument from DHHR.

-14-

### iii. Violation of Due Process Rights

Finally, Defendants argue that Ms. Forloine has not demonstrated a violation of either her substantive or procedural due rights sufficient to support her Count II claim. DHHR Defs.' Resp. at 16-17. For the reasons discussed below, the Court disagrees.

Regarding her procedural rights, Defendants contend that Plaintiff's status as a party to the Intermediate Court is sufficient to afford her due process. *See id.* As the Court has found above that this appeal was likely illegal, and that the Defendants therefore are in contravention of the Medicaid fair hearing provisions, this argument is easily rejected. As Ms. Forloine is entitled to a final resolution of her fair hearing appeal within 90 days, to be implemented within 72 hours by Aetna, the extended appeal and lack of resolution have hindered that entitlement. Accordingly, although she is aware of the Intermediate Court appeal and although the Board found in her favor, her fair hearing rights under 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. § 431.244 have been violated.

In arguing that there has been no violation of Ms. Forloine's procedural due process rights, Defendants assert that while they have a right to appeal the fair hearing decision to the Intermediate Court, Ms. Forloine lacked the right to request that fair hearing in the first instance. DHHR Defs.' Resp. at 3, 17-18. In other words, DHHR argues "that the Board of Review incorrectly determined that the surgeries are covered, which is a policy question, not one of eligibility." *Id.* at 18. In making this argument, Defendants rely upon the BMS Provider Manual's chapter on gender dysphoria treatments, which lists eighteen non-covered "cosmetic" procedures and states that "[n]on covered [sic] services are not eligible for a West Virginia [DHHR] Fair Hearing or a Desk/Document review." BMS Provider Manual Section 519.24.3, ECF No 6-1.

Again, this Court is not sitting in appellate jurisdiction over the Board of Review, which apparently was satisfied with its own jurisdiction over the issue. And yet, the Court will briefly

address Defendants' argument. Defendants believe that Aetna's decision that the requested procedures were non-covered as "cosmetic" precludes Ms. Forloine from requesting a fair hearing, in essence creating a system in which non-coverage decisions by an MCO regarding the treatment of gender dysphoria are unassailable. As a matter of fact, only one of the requested four procedures had been previously designated by the State as non-covered for gender dysphoria. *See id*. at 6. Accordingly, the other three surgeries were not subject to an unambiguous "policy question" or decision precluding them from coverage. The Board relied upon the language in BMS Provider Manual Section 519.24.3 to find that the other three surgeries were, in fact, covered. *See* Decision of State Hearing Officer at 4-5, ECF No. 1-4. The relevant Manual provision states: "Coverage is not available for surgeries or procedures that are cosmetic, such as services that change a beneficiary's appearance but not medically necessary to treat the patients [sic] underlying gender dysphoria." BMS Provider Manual Section 519.24.3. The Board found that because Ms. Forloine's physicians had determined the procedures are medically necessary to treat her underlying gender dysphoria, those procedures do not fit the "cosmetic" definition and are therefore covered.

The Court agrees that this is an imminently reasonable interpretation of the antecedent phrase in Section 519.24.3 as modified by the succeeding clause to condition a finding that a procedure is "cosmetic" in nature upon a lack of medical necessity in treating "underlying gender dysphoria." This interpretation accords with the Provider Manual's definition of a non-covered "cosmetic" surgery as "surgery having the primary purpose of improving the member's appearance and [which] *is not medically necessary*." "Non-Covered Services," BMS Provider Manual Section 519.16.3 (emphasis added).[2] Accordingly, the Court finds that the Board's decision to convene

---

[2] While not provided as an exhibit, this section of the Provider Manual was referenced at oral argument. The Court takes judicial notice of it here.

Ms. Forloine's fair hearing was a reasonable one, despite the language in Section 519.24.3. Therefore, nothing in the Provider Manual precludes the success of Plaintiff's procedural due process claim.

In support of her substantive due process argument, Ms. Forloine asserts a property interest in the Medicaid approvals. Mem. in Supp. of Mot. at 13-15. She asserts that Defendants have "de facto" denied her entitlements, which she has a property interest in receiving. However, the seminal case *Goldberg* and its progeny make clear that beneficiaries of government services only have a property right in benefits already awarded, rather than in prospective benefits. *See Goldberg v. Kelly*, 397 U.S. 254, 260 (1970) (involving termination of benefits); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576-77 (1972) (discussing this standard). Accordingly, whether or not the "de facto" denial of her benefits constitutes a substantive due process rights injury depends on whether the Board decision conclusively granted her the at-issue benefits, converting that "denial" into a "termination." The Court has found above that the Board's "final administrative action" very likely conclusively determined Ms. Forloine's eligibility for the requested procedures. Accordingly, the Court finds that she has a property interest in the procedures, and therefore, Plaintiff has demonstrated a high likelihood of a violation of her substantive due process rights.

### c.  Irreparable Harm

Ms. Forloine has convinced the Court that she will be irreparably harmed absent issuance of the requested preliminary injunction. Ms. Forloine states that absent a preliminary injunction she may be unable to obtain the procedures to which she is entitled by law. Mem. Supp. Pl.'s Mot. at 17-18. In support of this argument, Plaintiff avers that there are significant difficulties in obtaining surgery dates for the types of procedures she has been approved for, and consequently, any delay could jeopardize her ability to ever obtain this medical care. *Id.*

-17-

Defendants object that this is a speculative "mere possibility of harm" insufficient to meet the preliminary injunction standard. Def. Aetna's Resp. at 15-17 (quoting *Cunningham Energy, LLC v. Vesta O&G Holdings, LLC*, No. 2:20-CV-00061, 2020 WL 6140463, at *2 (S.D.W. Va. May 21, 2020)); *see* DHHR Defs.' Resp. at 22. Defendants assert variously that Plaintiff could wait for these procedures longer than has apparently been recommended by her medical professionals, pay for them out-of-pocket (despite her Medicaid eligibility), or attempt to expedite the Intermediate Court appeal to address her concerns. *See* Def. Aetna's Resp. at 15-17.

And yet, Plaintiff has persuasively argued that as a beneficiary of public assistance, she may demonstrate irreparable harm by showing that Defendants' actions could deny her necessary medical care. Mem. Supp. Pl.'s Mot. at 17 (citing *Pashby v. Delia*, 709 F.3d 307, 329 (4th Cir. 2013). *Pashby* stated that "beneficiaries of public assistance may demonstrate a risk of irreparable injury by showing that enforcement of a proposed rule may deny them needed medical care." 709 F.3d at 329 (quoting *M.R. v. Dreyfus*, 663 F.3d 1110, 1114 (9th Cir. 2011) *amended and superseded on denial of rehearing by* 697 F.3d 706); *see also Lisnitzer*, 983 F.3d at 585 (emphasizing the importance of Medicaid benefits which underlies the need for "final administrative action" to be issued and taken promptly). In finding that Medicaid recipient plaintiffs had sufficiently demonstrated a likelihood of irreparable harm, the *Pashby* Court emphasized that physicians had found that terminated care was "medically necessary." 709 F.3d at 329.

Here, the record indicates that not only have Ms. Forloine's physicians found that the three surgeries are "medically necessary," but the Board of Review has reviewed and affirmed that finding. Mem. Supp. Pl.'s Mot. at 2, 4. It is undisputed that DHHR's purported appeal has jeopardized Ms. Forloine's ability to obtain the procedures she is entitled to on the schedule her

doctors have proposed. Defendants' arguments amount to little more than assertions that Ms. Forloine could or should obtain necessary care outside of the Medicaid program or outside of the timeline initiated by her medical team, ignoring the fact that the Board has found her to be entitled to this care through Medicaid. Accordingly, the Court finds that Plaintiff has demonstrated a significant possibility of irreparable harm in the form of a denial of necessary medical care.

### d. Equities and the Public Interest

Finally, the Court finds that the balance of the equities and the public interest favor granting the requested preliminary injunction. Defendant Aetna argues at length that granting Ms. Forloine the requested injunction will entail significant financial risks to the public. Def. Aetna's Resp. at 18. If Ms. Forloine obtains the Board-approved medical procedures upon receiving a preliminary injunction but then later is found to not be eligible for those procedures, Aetna argues that it would likely be difficult for the public to recoup the cost of the procedures from Ms. Forloine, given her status as an indigent[3] recipient of Medicaid. *Id.*

A greater harm to the public would be if MCOs could indefinitely refuse to provide care mandated by law. Ms. Forloine has exercised her right under federal law to a fair hearing appeal. The state-assigned arbiter of such appeals found in her favor. Even if a court later overruled the decision in Ms. Forloine's favor, it still would better serve the public interest if insureds of the public plan erroneously receive doctor-determined necessary medical care than if they are denied necessary care for lengthy periods of time in contravention of "final administrative actions" by the

---

[3] The Court notes that the record before it does not state the basis on which Ms. Forloine is eligible for Medicaid, and that this information is irrelevant to the holding herein. Aetna argues that Ms. Forloine might not be indigent and might be able to fund the procedures herself, thereby not meeting the "likelihood of irreparable harm" standard. Def. Aetna's Resp. at 16. In the next breath, Defendant asserts that Ms. Forloine's assured indigency—as evidenced by her receipt of Medicaid—could cause significant harms to the public if she were order to re-pay Aetna and were unable to do so. *Id.* at 18. This is a contradictory position.

Board. In determining the balance of the equities in granting a preliminary injunction to a Medicaid recipient, the Fourth Circuit emphasized that harm to individuals who are denied medical services outweighs state interests "measured only in money" which are therefore "inconsequential by comparison." *Todd v. Sorrell*, 841 F.2d 87, 88 (4th Cir. 1988). While *Todd* involved an urgently needed liver transplant, the Court finds the principal equally applicable to the instant case. Accordingly, the Court finds that the public interest and balance of the equities lie in providing Ms. Forloine with medical care.

## IV. CONCLUSION

For the forgoing reasons, Plaintiff Mara Forloine's Motion for Temporary and Preliminary Injunctive Relief (ECF No. 6) was **GRANTED** by Court Order on July 26, 2023. ECF No. 29. In that Order, the Court **DIRECTED** Defendants to carry out the final decision of the State Agency as expressed in the Board of Review's final administrative decision on Ms. Forloine's fair hearing and to issue pre-approval for the three surgical procedures upheld as medically necessary by the Board of Review's final administrative decision.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        August 1, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE