## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

MARA FORLOINE,

                Plaintiff,

*v.*                                      CIVIL ACTION NO.   3:23-0450

DR. CYNTHIA PERSILY,
Secretary of the West Virginia Department Human Services,
in her official capacity only,
CYNTHIA BEANE,
Deputy Commissioner of the Bureau of Medical Services,
in her official capacity only, and
AETNA BETTER HEALTH OF WEST VIRGINIA,

                Defendants.

### MEMORANDUM OPINION & ORDER

       Pending are Plaintiff Mara Forloine's Motion to Amend Complaint ("Pl.'s Mot."), *see* ECF No. 64, Defendants Cynthia Persily and Cynthia Beane's Motion to Dismiss ("State Mot."), *see* ECF No. 24, and Defendant Aetna Better Health of West Virginia's Motion to Dismiss ("Aetna Mot."), *see* ECF No. 27. Upon review, the Court **GRANTS** Plaintiff's Motion to Amend and **GRANTS IN PART**, **DENIES IN PART** Defendants' Motions to Dismiss.[1]

---

[1] The Court also considered Defendants Persily & Beane's Response in Opposition to Plaintiff's Motion to Amend ("State Amend Opp'n"), ECF No. 69; Defendant Aetna Better Health of West Virginia's Response in Opposition to Plaintiff's Motion to Amend ("Aetna Amend Opp'n"), ECF No. 70; Plaintiff's Reply to Defendant's Responses in Opposition to Plaintiff's Motion to Amend ("Pl.'s Amend Reply"), ECF No. 71; Defendants Persily & Beane's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint ("State Mem."), ECF No. 25; Plaintiff's Response in Opposition to Defendants' Motion to Dismiss ("Pl.'s State Resp."), ECF No. 31; Defendants Persily & Beane's Reply to Plaintiff's Response to Defendants' Motion to Dismiss ("State Reply"), ECF No. 36; Defendant Aetna's Memorandum of Law in Support of Aetna's Motion to Dismiss ("Aetna Mem."), ECF No. 28; Plaintiff's Response in Opposition to Defendant Aetna's Motion to Dismiss ("Pl.'s Aetna Resp."), ECF No. 33; and Defendant Aetna's Reply in Support of its Motion to Dismiss ("Aetna Reply"), ECF No. 37.

## BACKGROUND

### I

Medicaid provides medical assistance to certain low-income individuals. *See* 42 U.S.C. § 1396-1. It is a "cooperative federal-state program." *Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606, 610 (2012). In exchange for federal funds, states agree to follow "congressionally imposed conditions." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 323 (2015). This case implicates three conditions: the fair hearing requirement, the final administrative action requirement, and the single State agency requirement. *See* Am. Compl. ¶¶ 21–22.

The fair hearing requirement requires states to provide a hearing to Medicaid applicants who receive an adverse eligibility determination from a managed care organization ("MCO"). *See* 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.220(a)(4); *id.* § 438.408(f)(1). The fair hearing must be conducted at a reasonable time, date, and place after adequate notice and before impartial decisionmakers not directly involved in the initial determination. *See id.* § 431.240(a). At the hearing, the applicant can examine records, bring witnesses, establish facts, present arguments, refute opposing evidence, and cross-examine witnesses. *See* 42 C.F.R. § 431.242.

After the fair hearing, the final administrative action requirement kicks in. It mandates the state agency conducting the fair hearing "[o]rdinarily" take "final administrative action" within ninety days of the Medicaid applicant's request for a fair hearing. 42 C.F.R. § 431.244(f).

Behind both requirements rests the single State agency requirement. It requires states to designate a "single State agency" to administer and supervise the state's Medicaid program. 42 U.S.C. § 1396a(a)(5). Other entities may help the single State agency. *See* 42 C.F.R. § 431.10(c) (discussing delegations). But only the single State agency can "supervise" and "issue polices, rules, and regulations" regarding Medicaid program matters. *Id.* § 431.10(e).

When a state participates in the Medicaid program, they must submit "plans for medical assistance" to the U.S. Secretary of Health & Human Services. 42 U.S.C. § 1396-1. If the State Plan complies with the Medicaid Act, the state may receive federal funds. *See* 42 U.S.C. § 1396b. If the Secretary later learns a state is not "substantially" complying with the Medicaid Act, the Secretary may withhold federal funds. 42 U.S.C. § 1396c.

West Virginia participates in Medicaid. *See Fain v. Crouch*, 618 F. Supp. 3d 313, 319 (S.D. W. Va. 2022). The Bureau of Medical Services ("BMS")—a subdivision of West Virginia's Department of Health & Human Resources ("DHHR")—is the state's single State agency. *See* W. Va. Code § 9-1-2(n) (1998) (defining "state medical agency" as the "division of the department of health and human resources that is the federally designated single state agency with administration and supervision of the state Medicaid program"); *id.* § 9-2-13(a)(3) (2018) (defining BMS as the "single state agency for Medicaid services in West Virginia"). *See also Appalachian Reg'l Healthcare, Inc. v. W. Va. Dep't of Health & Human Res.*, 752 S.E.2d 419, 422 (W. Va. 2013) (recognizing BMS as the single State agency).

In turn, BMS delegates its authority to conduct all fair hearings and issue final Medicaid eligibility decisions to DHHR's Board of Review. *See* W. Va. Code §§ 9-2-6 (13), (14) (2022).[2]

## II

Mara Forloine is transgender. *See* Am. Compl. ¶ 7, ECF No. 71-1. She is diagnosed with gender dysphoria. *See id.* ¶ 20. She is eligible for Medicaid benefits. *See id.* ¶¶ 1, 7.

In December 2022, Forloine requested Aetna Better Health of West Virginia issue Medicaid pre-approvals for four surgical procedures to treat her gender dysphoria: frontal

---

[2] In May 2023 and February 2024, the West Virginia State Legislature divided the Department of Health & Human Resources into three organizations. *See* W. Va. Code § 9-2-1 (2023). Still, BMS remains West Virginia's single State agency. *See id.* § 9-1-2 (2024) (explaining BMS is the "federally designated single state agency charged with administration and supervision of the state Medicaid program").

cranioplasty, brow lift, hairline advancement, and orbital rim recontouring. *See id.* ¶ 16. Aetna denied Forloine's request because her medical providers "did not say" the surgeries were "medically necessary." *Id.*, Ex. 5 at 2 ¶ 6, ECF No. 1-5 (quotation omitted).

Forloine appealed. *See id.* ¶ 25. Aetna denied the appeal. *See id.* Frustrated, Forloine requested a fair hearing from the Board of Review. *See id.* ¶ 26.

State Hearing Officer Todd Thornton oversaw the fair hearing. *See id.* ¶ 34. Aetna argued the requested surgeries were cosmetic, not medically necessary, and not covered services under BMS Provider Manual Chapter 519.24. *See id.* ¶ 37. In response, Forloine presented evidence from her medical providers explaining why the surgeries were medically necessary to treat her gender dysphoria. *See id.* ¶ 38; *id.*, Ex. 5 at 3–4 ¶¶ 11–16. She also shared a copy of this Court's decision in *Fain v. Crouch*, 618 F. Supp. 3d 313 (S.D. W. Va. 2022). *See id.* at 2.

In March 2023, the Board of Review issued its decision. *See generally id.*, Ex. 5. Its decision makes two findings. *First*, the Board denied coverage for the brow lift procedure because BMS Provider Manual Chapter 519.24.3 "specifically identified" brow lifts "as a non-covered cosmetic procedure." *Id.* at 5. *Second*, the Board approved coverage for the frontal cranioplasty, hairline advancement, and orbital rim recontouring procedures. *See id.* The Board emphasized Chapter 519.24.3 does not mention these procedures. *See id.* As such, the Board found no basis for "expanding the non-covered services" to medically necessary procedures designed to treat gender dysphoria. *Id.* The Board chastised Aetna for "ignor[ing]" statements from Forloine's medical providers demonstrating the medical necessity of the requested procedures. *Id.* at 4–5. The Board rejected Aetna's argument that a procedure cannot be medically necessary if the procedure has a "cosmetic element." *Id.* at 5. Instead, when evidence suggests medical necessity, the Board stressed, "any cosmetic element to the procedures [is] irrelevant." *Id.*

DHHR disagreed with the Board's decision. *See id.* ¶ 49. So it appealed the Board's decision to the Intermediate Court of Appeals of West Virginia. *See id.* ¶ 50. Meanwhile, Aetna refused to issue pre-approvals for the surgeries. *See id.* ¶ 53.

Forloine filed suit. In July 2023, this Court ordered Defendants to issue pre-approvals for the three approved surgeries identified in the Board of Review's March 2023 decision. *See* ECF Nos. 29, 32, 52. In September 2023, Forloine received the three surgeries. *See* Am. Compl. ¶ 53. Since then, Aetna refuses to reimburse Forloine for the surgeries, *see id.* ¶ 56, and DHHR's appeal is still pending, *see id.* ¶ 52.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(2) provides a party "may amend its pleading only with the opposing party's written consent or the court's leave" after a responsive pleading is filed. The Court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This ensures the Court resolves cases "on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). Despite this "liberal rule," a court may deny a motion to amend if the proposed amendment would be futile. *Id.* An amendment is futile if the proposed amendment would fail to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See In re Triangle Capital Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021).

Here, the Amended Complaint makes two changes. *First*, the Amended Complaint updates the State defendants to match "recent changes" in the "organization and structure" of the Department of Health & Human Resources. *See* Pl.'s Mot. at 1–2; *supra* n.2. *Second*, the Amended Complaint adds a claim for relief under the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq. See* Pl.'s Mot. at 2. Defendants do not contest the first change. *See* Pl.'s Amend Reply at 1–2.

Instead, they attack the entire Amended Complaint as futile and incorporate their prior Motions to Dismiss. *See* State Amend Opp'n at 4–5; Aetna Amend Opp'n at 11.

Given this "rare circumstance" and the "unique record" of this case, the Court converts Defendants' Motions to Dismiss Forloine's initial complaint to Motions to Dismiss Forloine's Amended Complaint. *Wesley v. Charlotte-Mecklenburg Cnty. Police Dep't*, 2020 WL 5822216, at *4 (W.D.N.C. Sept. 30, 2020) (taking similar approach "in the interest of judicial efficiency"). Accordingly, the Court will apply the 12(b)(6) standard to the Amended Complaint as a whole. *See Perlmutter v. Varone*, 2020 WL 2839097, at *2 n.2 (D. Md. June 1, 2020). Defendants need not file more motions to dismiss. *See Ortegel v. Va. Polytechnic Inst. & State Univ.*, 2023 WL 8014237, at *1 n.2 (W.D. Va. Nov. 20, 2023).

A motion to dismiss tests the formal sufficiency of the plaintiff's complaint. *See Rep. Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive a motion to dismiss, the complaint must contain a "short and plain statement" "showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). That is, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if its "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

The Court accepts factual allegations in the complaint as true, *see id.*, and "draw[s] all reasonable inferences in favor of the plaintiff," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* (citation omitted). Still, a complaint may proceed even if "a savvy judge" finds actual proof of its alleged facts "improbable" and recovery "very remote and unlikely." *Twombly*, 550 U.S. at 556.

## ANALYSIS

### I

The Court begins with whether it can hear this case at all. Defendants argue this Court lacks subject matter jurisdiction. *See* State Mem. at 3–5; Aetna Mem. at 7–9. Alternatively, Defendants urge this Court to abstain under *Younger*, *Burford*, or *Colorado River* abstention. *See* State Mem. at 5–7; Aetna Mem. at 10–13. None of these arguments persuade. The Court can hear this case.[3]

### A

Defendants first attack subject matter jurisdiction. This argument is meritless. Forloine alleges Defendants violated the Medicaid Act, *see* Am. Compl. ¶¶ 58–59, the Americans with Disabilities Act, *see id.* ¶¶ 68–77, the Fourteenth Amendment's Due Process Clause, *see id.* ¶¶ 60–62, and the Fourteenth Amendment's Equal Protection Clause, *see id.* ¶¶ 63–67. These federal claims are presented "on the face" of her complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The Court, therefore, has federal question jurisdiction under 28 U.S.C. § 1331.

Defendants do not dispute this. Instead, they invoke the *Rooker-Feldman* doctrine, *see* State Mem. at 4–5, and insist "this case is little more than a disguise for the current appeal of a benefits denial in state court," Aetna Mem. at 7. The Court disagrees.

*Rooker-Feldman* is a "narrow" jurisdictional doctrine "confined to cases of the kind from which the doctrine acquired its name"—that is, *Rooker v. Fidelity Trust Co.* and *D.C. Court of Appeals v. Feldman*. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). These cases sing the same song: state court litigants do not have a right of appeal in the federal

---

[3] The Court recognizes it resolved these issues at the preliminary injunction stage. *See Forloine v. Coben*, 2023 WL 5944294, at *2–*4 (S.D. W. Va. Sept. 12, 2023). The Court repeats itself not to belabor the point, but to reinforce why invoking nearly every abstention doctrine is rarely successful. When a federal court has jurisdiction over a case or controversy, it has a "virtually unflagging obligation" to exercise it. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). This case is no exception.

district courts. *See Exxon Mobil*, 544 U.S. at 284. The focus of the doctrine is, therefore, the injury the plaintiff seeks to redress. *See Burrell v. Virginia*, 395 F.3d 508, 512 (4th Cir. 2005). If the plaintiff wants to use a federal district court to "overturn an injurious state-court judgment," the doctrine bars suit. *Exxon Mobil*, 544 U.S. at 292–93. If not, the doctrine is inapplicable. *See id.*

 *Rooker-Feldman* is inapplicable here. Forloine is not a state court loser. She won her appeal in the Board of Review. *See* Am. Compl. ¶ 44. She does not argue the Board erred. She does not ask the Court to review the Board's underlying administrative record or repeat arguments made to the Board. Simply put, Forloine does not ask this Court to overturn a state court judgment. Indeed, there is no state court judgment to review—DHHR's appeal is still pending. *See id.* ¶ 50. Instead, Forloine presents "independent" federal claims in a federal forum. *Exxon*, 544 U.S. at 293. This is enough for subject matter jurisdiction under 28 U.S.C. § 1331. *See Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 340 (4th Cir. 2022) (expressing reticence to bar claims under *Rooker-Feldman*).[4]

## B

 Defendants shift tactics. They argue this Court should abstain and cite *Younger*, *Burford*, and *Colorado River* abstention. *See* State Mem. at 5–7; Aetna Mem. at 10–13. The Court disagrees.

 Start with *Younger*. Federal courts should be reluctant to "stay or enjoin pending state court proceedings except under special circumstances." *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 95

---

[4] Aetna suggests Forloine's suit is forum shopping and procedural fencing. *See* Aetna Mem. at 10. Really? Forloine lives in West Virginia. *See* Am. Compl. ¶ 7. Defendants operate in West Virginia. *See id.* ¶¶ 8–15. And the allegedly unlawful activity took place in West Virginia. *See id.* ¶¶ 50, 52, 56. So Forloine sued in West Virginia. *See id.* ¶ 1. This is not forum shopping. *See Andritz Hydro Corp. v. PPL Mont.*, LLC, 2014 WL 868750, at *7 (W.D.N.C. Mar. 5, 2014) ("As Plaintiff filed suit in its home district, forum shopping is not an issue in this case."). Furthermore, Forloine is not asking this Court to decide the issues DHHR raises in its state court appeal. *Compare* Am. Compl. ¶ 51 (describing DHHR's arguments on appeal) *with id.* ¶¶ 58–77 (presenting totally different claims). This is not procedural fencing. *See Nautilus Ins. Co. v. 200 West Cherry Street, LLC*, 383 F. Supp. 3d 494, 508 (E.D. Va. 2020) (explaining procedural fencing occurs when a litigant "races" to a federal courthouse to stop a state court from issuing an adverse decision regarding the same issues).

(4th Cir. 2022) (quoting *Younger v. Harris*, 401 U.S. 37, 41 (1971)). But *Younger* abstention is "the exception, not the rule." *Jonathan R. by Dixon*, 41 F.4th at 332 (quotation omitted). In *Sprint Communications, Inc. v. Jacobs*, the Supreme Court limited *Younger* abstention to "ongoing state criminal prosecutions," "certain civil enforcement proceedings," and "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." 571 U.S. 69, 78 (2013). If the state proceeding does not fall within any of these "three exceptional categories," it does not "trigger" *Younger* abstention. *Id.* at 79.

This case does not fit any of these "three settled categories." *Jonathan R. by Dixon*, 41 F.4th at 329. There is no criminal prosecution, no civil enforcement proceeding, and no state court order. The Court can exercise jurisdiction "without worrying about stepping on state toes." *Id.*

*Burford* is next. Federal courts should defer to complex state administrative procedures. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 331–34 (1943). Even so, *Burford* abstention is limited. In *Quackenbush v. Allstate Ins.*, the Supreme Court clarified *Burford* abstention is appropriate when the case presents a difficult issue of state law, the case is in an area of important state policy, and there is a unified state enforcement mechanism established to resolve the rights in question. *See* 517 U.S. 706, 726–27 (1996). These factors "only rarely favor abstention." *Id.* at 728.

This case implicates none of these concerns. The Amended Complaint raises only federal claims. Yes, the relief requested may limit the appellate jurisdiction of West Virginia state courts—an issue "at the heart of the state's police power." *Johnson v. Collins Ent. Co., Inc.*, 199 F.3d 710, 720 (4th Cir. 1999). Yet state police powers may not be wielded in violation of federal law. *See, e.g.*, *Fain*, 618 F. Supp. 3d at 334 (holding denying transgender individuals surgeries medically necessary to treat gender dysphoria violates the Equal Protection Clause). Federal courts play a role in protecting federal rights. *See id.* Abstention is, therefore, unwarranted.

Finally, consider *Colorado River*. Generally, a pending state court action is no bar to federal court proceedings concerning the same matter. *See McClellan v. Carland*, 217 U.S. 268, 282 (1910). However, a federal court may abstain from exercising jurisdiction when the federal and state actions are parallel. *See Colorado River Water Conservation Dist.*, 424 U.S. at 818–19. Federal and state actions are parallel only "if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991). The state litigation must provide "complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). If "any serious doubt" exists the state action might not do so, abstention is improper. *VonRosenberg v. Lawrence*, 849 F.3d 163, 168 (4th Cir. 2017).

Forloine's federal action is nothing like DHHR's state action. They explore different issues and seek different remedies. The federal action asks whether DHHR can seek state judicial review of a Medicaid eligibility determination from the Board of Review. It seeks injunctive relief. The state action asks whether three surgeries are covered services under the West Virginia Medicaid Plan. It seeks a reversal of the underlying administrative decision. Sure, the proceedings stem from the "same factual circumstances." *New Beckley*, 946 F.2d at 1074. But "some factual overlap" does not "dictate" abstention. *Id. See also vonRosenberg*, 849 F.3d at 168 (explaining proceedings are not parallel "if they differ in scope or involve different remedies"). Because the two proceedings do not have the "same underlying issue," abstention is improper. *Id.* at 169.

* * *

In sum, *Younger*, *Burford*, and *Colorado River* do not prevent this Court from determining whether Defendants violated federal law. The Court proceeds to the merits.

-10-

**II**

In Count I, Forloine asserts a § 1983 claim. *See* Am. Compl. ¶ 58. She alleges Defendants violated the federal Medicaid Act, 42 U.S.C. § 1396 *et seq.*, and its implementing regulations, *see* 42 C.F.R. §§ 430–56. *See id.* She seeks damages against Aetna, injunctive relief against DHHR and Aetna, and attorneys' fees. *See id.* ¶ 59.

This case raises novel statutory and constitutional claims. Unfortunately, Count I is "utterly devoid of specifics." *Ahumada v. Nish*, 756 F.3d 268, 281 (4th Cir. 2014). On its face, Count I alleges Defendants violated the entire Medicaid Act and all twenty-six parts of the statute's implementing regulations. Yet Count I fails to incorporate previous complaint paragraphs, include supporting facts, or even recite the elements of her claim. Instead, it "merely recites the law with a bald assertion that the defendants violated it." *Jesse v. Wells Fargo Home Mortg.*, 882 F. Supp. 2d 877, 880 (E.D. Va. 2012). This is unacceptable. *See Gross v. Morgan State Univ.*, 308 F. Supp. 3d 861, 868 (D. Md. 2018) (declaring a plaintiff must do more than "merely invok[e] the name of the Act and offer[] only her bare conclusion that Defendants violated it").

Nevertheless, the Court must interpret pleadings "so as to do justice." Fed. R. Civ. P. 8(e). The Court will look to the entire Amended Complaint and briefing to narrow Count I. Even so, the Court will not "bend over backwards" to "salvage" an otherwise faulty claim. *Sullivan v. City of Frederick*, 2018 WL 337759, at *4 (D. Md. Jan. 9, 2018).

The Court interprets Count I to allege DHHR's appeal violated the Medicaid Act's fair hearing requirement, *see* Am. Compl. ¶ 26, its final administrative hearing requirement, *see id.* ¶ 27, and its single State agency requirement, *see id.* ¶ 28. Upon review, the Court finds—considered collectively—these requirements plausibly state a claim for relief.

**A**

Consider the fair hearing and final administrative action requirements first. Under the fair hearing requirement, a State must provide "a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3).

Unfortunately, § 1396a(a)(3) does not define "fair hearing." Luckily, its implementing regulations fill in the gaps. They require the hearing "meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254 (1970)). This means the state Agency must notify the applicant "in writing," *id.* § 431.245, of its decision "based exclusively on evidence introduced at the hearing," *id.* § 431.244(a). *See Shaknes v. Berlin*, 689 F.3d 244, 256 (2d Cir. 2012) (grounding this requirement in *Goldberg*); *Thompson By & Through Bailey v. Fitzgerald*, 558 F. Supp. 3d 1334, 1348 (N.D. Ga. 2021) (endorsing *Shaknes*); *Gomolisky v. Davis*, 716 N.E.2d 970, 974 (Ind. App. 1999) (finding a "necessary" part of a fair hearing is a "final decision within a reasonable time.").

The fair hearing requirement's promise to a written decision implies the decision must be "issued within some period of time." *Shaknes*, 689 F.3d at 256; *Gomolisky*, 716 N.E.2d at 974. Again, § 1396a(a)(3) itself provides little guidance. This is where the final administrative action requirement comes in. Under 42 C.F.R. § 431.244(f)(1), the agency conducting the fair hearing must issue its written decision "[o]rdinarily" within ninety days of the request for the fair hearing.

What must the written decision say? Well—at a minimum, the state Agency's decision must provide "conclusively" determine an applicant's Medicaid eligibility. *Lisnitzer v. Zucker*, 983 F.3d 578, 584 (2d Cir. 2020). This eligibility determination is "final." *Id.* at 585. Indeed, when the state Agency reverses an MCO's erroneous decision, the MCO must "authorize or provide the disputed services promptly and as expeditiously as the enrollee's health condition requires but no

later than 72 hours from the date it receives notice reversing the determination." 42 C.F.R. § 438.424(a). Similarly, if the State itself made the erroneous decision, it too must "promptly make corrective payments" when the state Agency corrects its mistake. *Id.* § 431.246(a). Simply put, when the state Agency speaks, the rest of the State and MCOs must listen. Its decision is "binding" on the State and MCOs. *Catanzano v. Wing*, 103 F.3d 223, 228 (2d Cir. 1996).

West Virginia understands these principles. Under West Virginia law, BMS—a subdivision of DHHR—is the state's single State agency. *See, e.g.*, W. Va. Code § 9-2-13(a)(3) (2018) (defining BMS as the "single state agency for Medicaid services in West Virginia"). BMS delegates its authority to conduct fair hearings and issue final eligibility determinations to the Board of Review. *See* West Virginia State Plan at 2, ECF No. 6-6.

This delegation means the Board's Medicaid eligibility determinations are "final" and "conclusive." West Virginia State Medicaid Manual at 2903.2(A), ECF No. 6-3; State Plan at 3. They bind other State and Local agencies. *See* State Medicaid Manual at 2903.2(A). *Cf. Catanzano*, 103 F.3d at 228 (explaining a private certified home health agency is "bound by the results of administrative hearings overturning their determinations" because they are "'the state' at the fair hearing" and must "shoulder 'the state's' burden if it loses at the that hearing").

In other words, when the Board of Review issues a decision, its decision is the "consummation" of West Virginia's decision-making process, determines "rights [and] obligations" of the Medicaid applicant and the State, and causes "legal consequences [to] flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Otherwise, a Medicaid applicant who loses at the fair hearing could not seek judicial review—a right promised by 42 C.F.R. § 431.245. *Cf. Kostenko v. U.S. Dep't of Health & Human Servs.*, 916 F. Supp. 2d 661, 667 (S.D. W. Va. 2013) (explaining only "final agency action" is ripe for judicial review).

Altogether, when the fair hearing Agency's decision awards benefits to a Medicaid applicant, DHHR is "responsible" for nothing more than implementing the decision "promptly." State Medicaid Manual at 2903.2(A).

Count I embodies these principles. Forloine alleges she received a timely "final and conclusive" eligibility determination from the Board of Review awarding her three surgeries to treat her gender dysphira. Am. Compl. ¶ 47. The Board's decision should have bound the State and Aetna to Forloine's eligibility for the three procedures. *See id.* DHHR disagreed. *See id.* ¶ 49. So it appealed the Board's decision to the West Virginia Intermediate Court of Appeals. *See id.* ¶ 50. The Board's appeal of "their own decision" leaves Forloine—and patients like her—in the lurch. *Forloine*, 2023 WL 5944294 at *6 (describing this "absurdity"). She cannot take advantage of what the fair hearing and final administrative action requirements promise her: a prompt, conclusive State determination of whether Medicaid will cover a requested procedure.

## B

Forloine can also rely on the Single state agency requirement. To participate in Medicaid, a state must designate "a single State agency to administer or to supervise the administration" of its Medicaid program. 42 U.S.C. § 1396a(5). This single State agency may in turn delegate its authority to conduct fair hearings and eligibility determinations to another government agency. *See* 42 C.F.R. 431.10(c)(2). But it may not delegate "the authority to supervise the [state's Medicaid] plan or to develop or issue policies, rules, and regulations on programs matters." 42 C.F.R. § 431.10(e). In other words, the delegation "can go only so far." *K.C. ex rel. Africa H. v. Shipman*, 716 F.3d 107, 113 (4th Cir. 2013). When the single State agency (or its delegee) makes a final decision, "it cannot be overridden by another state or local entity." *Id.* Doing so interferes with the single State's agency's "authority to supervise" the State Medicaid Plan. 42 C.F.R. §

-14-

431.10(e). *See also id.* § 431.10(3)(i)(A) (requiring the single State agency to ensure the delegated

agency "[c]omplies with all relevant Federal and State law, regulations, and policies").

The single State agency requirement reflects "two important values." *Shipman*, 716 F.3d

at 112. *First*, the requirement ensures final authority to make complex decisions governing a state's

Medicaid program rests with "one (and only one) agency." *Id.* It avoids the "disarray" of multiple

entities issuing conflicting eligibility determinations. *Id. Second*, the requirement dissuades states

from evading federal Medicaid law "by passing the buck to other agencies that take a less generous

view of a particular obligation." *Id.* In short, the single State agency requirement ensures state

Medicaid programs operate efficiently and responsively. *See id.* at 112–113. *See also San Lazaro

Ass'n v. Connell*, 286 F.3d 1088, 1100–01 (9th Cir. 2002) (noting similar rationales).[5]

Count I reflects these principles. Again, Forloines alleges BMS is West Virginia's single

State agency. *See* Am. Compl. ¶ 30. *See also* W. Va. Code § 9-2-13(a)(3) (2015) (defining BMS

as the "single state agency for Medicaid services in West Virginia"); *State ex rel. Heartland of

Beckley WV, LLC v. W. Va. Bur. for Med. Servs.*, 2021 WL 1944395, at *1 (W. Va. May 14, 2021)

("BMS is the state agency charged with administering West Virginia's Medicaid program"). In

turn, Forloine alleges BMS delegates to the Board of Review the "power to make final

---

[5] The Court acknowledges *Shipman* interprets 42 C.F.R. § 431.10(e)'s predecessor—§ 431.10(e)(3). *See id.* at 112. In May 2013, § 410.10(e)(e) read:

> If other State or local agencies or offices perform services for the Medicaid agency, they must not have the authority to change or disapprove any administrative decision of that agency, or otherwise substitute their judgment for that of the Medicaid agency with respect to the application of policies, rules, and regulations issued by the Medicaid agency.

In October 2013, the Secretary revised § 431.10(e) to account for the Exchange created by the Affordable Care Act. *See* 78 Fed. Reg. 42160, 42164 (July 15, 2013). The Secretary acknowledged the revised § 431.10(e) continues to "clearly" provide only the single State agency "may develop and issue rules and policies related to the Medicaid program." *Id.* at 42167. The Court, therefore, finds *Shipman* instructive. *See B&D Integrated Health Servs. v. N.C. Dep't of Health & Human Servs.*, 892 S.E.2d 427, 433 (N.C. Ct. App. 2023) (citing *Shipman* to interpret the revised § 431.10(e)).

administrative determinations of Medicaid eligibility issues." Am. Compl. ¶ 28. *See also* W. Va. Code §§ 9-2-6 (13), (14) (2022). Once the Board issued its March 2023 decision, she alleges DHHR became bound by it. *See* Am. Compl. ¶¶ 32, 47. As a result, DHHR cannot appeal the decision. *See* Am. Compl. ¶ 50. Doing so, places DHHR "in the driver's seat" and allows it to "call the shots on how the State's Medicaid program is to be administered." *Shipman*, 716 F.3d at 107.

\* \* \*

In sum, the Court finds Count I raises a "reasonable inference" Defendants are "liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## C

Defendants disagree. They launch three attacks. None succeed.

## 1

Defendants start by stressing the single State agency requirement does not confer a private cause of action. *See* State Mem. at 10–11. This may be true. Section 1396a(5) lacks the "clear and unambiguous" rights-conferring language Congress typically uses to create private causes of action. *See Planned Parenthood S. Atlantic v. Kerr*, 2024 WL 928046, at \*11 (4th Cir. Mar. 5, 2024) (summarizing current law dealing with private causes of action in the Medicaid Act).

Even so, Forloine is not out of luck. She seeks relief under § 1396a(a)(3)'s fair hearing and final administrative action requirements—a statute granting Medicaid applicants a private cause of action. *See* Pl.'s 8–9 (citing cases). *See also Shaknes*, 689 F.3d at 254–56 (holding § 1396a(a)(3) creates a right, enforceable under § 1983, to a receive a fair hearing and fair hearing decision "ordinarily, within 90 days" of a fair hearing request); *Thompson*, 558 F. Supp. 3d at 1348 (same).

In addition, Forloine can enforce the single State agency requirement under *Ex Parte Young*. For "more than a century," federal courts have "command[ed]" state officials to "refrain

from violating federal law" under *Ex Parte Young*, 209 U.S. 123 (1908). *Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–55 (2011). Grounded in "traditional equity practice," *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021), *Young* injunctions help "vindicate federal rights and hold state officials to the 'supreme authority of the United States,'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984) (quotation omitted).

To determine whether a plaintiff can seek *Young* relief, the Court undertakes a "straightforward inquiry." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). The Court looks to see if the complaint alleges an "ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (quotation omitted).

 Forloine's suit "no doubt" satisfies this standard. *Stewart*, 563 U.S. at 255. She alleges Defendants' appeal violates the federal Medicaid Act and seeks an injunction requiring them to dismiss their appeal and to implement the Board of Review's March 2023 decision. *See* Am. Compl. ¶¶ 48, 50, 52, 59. The appeal is still pending and Aetna refuses to provide reimbursement for the September 2023 surgeries. *See id.* ¶¶ 52, 56. If she succeeds on Count I, the proposed injunction "would prospectively abate the[se] alleged violation[s]." *Stewart*, 563 U.S. at 255.

Of course, Congress can limit the power of federal courts to issue *Young* relief through express or implied limitations. *See, e.g.*, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74 (1996). In the Medicaid context, *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), is instructive. There, the Supreme Court held 42 U.S.C. § 1396a(a)(30)(A) precluded *Young* relief. *See id.* at 329. Section 30(A) requires state Medicaid Plans to provide for payments "consistent with efficiency, economy and quality of care" while "safeguard[ing] against unnecessary utilization of . . . care and services." *Id.* at 328 (quotation omitted).

In reaching its decision, the Court highlighted two aspects demonstrating Congress's "intent to foreclose" equitable relief. *Id.* (quoting *Verizon Md., Inc.*, 535 U.S. at 647). The Court emphasized the "sole remedy" provided for a state's failure to comply with Medicaid's requirements is the withholding of funds by the Secretary of Health & Human Services. *Id.* (citing 42 U.S.C. § 1396c). Yet, this express provision was not enough to preclude equitable relief. *See id.* (citing *Stewart*, 563 U.S. at 256 n.3). Instead, the crux of the Court's decision emphasized the "judicially unadministrable nature" of § 30(A)'s text. *Id.* Indeed, the Court found it "difficult to imagine a requirement broader and less specific." *Id.* Moreover, the Secretary alone explicated this "judgment-laden standard"—making private enforcement imprudent. *Id.* at 328–29.

Section 1396a(5) is nothing like § 30(A). It is readily administrable. The single State agency requirement sets a simple standard: only the single State agency (or its delegee) can issue final eligibility determinations. Once issued, other entities cannot override or modify them. *See Shipman*, 716 F.3d at 111–12. At least three courts have applied § 1396a(5) without issue. *See Shipman*, 716 F.3d at 113–15; *Wiesner v. Washtenaw Cnty. Mental Health*, 986 N.W.2d 629, 634–35 (Mich. 2022); *Forsyth Cnty. Bd. of Div. of Social Serv.*, 346 S.E.2d 414, 416–17 (N.C. 1986). The Court finds no excuse to deviate here.[6]

## 2

Defendants try again. They argue West Virginia state law governs whether DHHR can seek judicial review. *See* State Mem. at 13–14; State Amend Opp'n at 10–11. They rely on W. Va. Code § 16-1-22a(c) (2023) and *West Virginia Department of Health & Human Resources Office of*

---

[6] DHHR suggests Forloine does not allege "ongoing violations of law" and does not identify actions to be "halted." State Amend Opp'n at 20. Not so. Forloine alleges DHHR maintains its appeal and Aetna refuses to reimburse her for her surgeries. *See* Am. Compl. ¶¶ 52, 56. Indeed, DHHR and Aetna concede both actions. *See* State Amend Opp'n at 23 ("WVDHHR challenged and continues to challenge her qualifications for Medicaid benefits for non-covered services."); Aetna Amend Opp'n at 9–10 (conceding Aetna has not paid "all the claim submitted thus far" by Forloine).

*Health Facility Licensure v. Heart 2 Heart Volunteers, Inc.*, 896 S.E.2d 102 (W. Va. Ct. App. 2023), for support. *See id.*; State Amend Opp'n at 11. This argument is premature.

Forloine alleges Defendants violate 42 U.S.C. § 1396a(5)—a federal statute. *See supra* Part II. If she prevails, state law is immaterial. Defendants cannot cite state law to violate federal law. *See* U.S. Const., art. VI, cl. 2 (providing federal law is the "supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding").

**3**

Defendants make one last pitch. They argue *Shipman* authorizes a single State agency to seek judicial review. *See* State Mem. at 14–15. DHHR "has made an administrative decision as West Virginia's 'single State agency' to challenge the Board of Review's determination." *Id.* at 15. As a result, their appeal is lawful. Again, the Court is not persuaded.

In *Shipman*, Medicaid beneficiaries sued the Secretary of the North Carolina Department of Health & Human Services ("NCDHHS"), Piedmont Behavioral Healthcare ("PBH"), and the Director of PBH. *See* 716 F.3d at 109. The District Court awarded plaintiffs a preliminary injunction. *See id.* PBH and its Director appealed. *See id.* NCDHHS did not. *See id.* at 114.

The Fourth Circuit dismissed the appeal for lack of jurisdiction. *See id.* at 115. North Carolina law designated NCDHHS as the Tar Heel State's single State agency. *See id.* at 113 (citing N.C. Gen. State § 108A-54). As a result, PBH could not appeal the District Court's decision "in the absence of the NCDHHS." *Id.* at 112. Through its appeal, PBH sought to have "substantial impacts on the management of a state's Medicaid program." *Id.* at 114. Dissolving the preliminary injunction would strip Medicaid beneficiaries from benefits—a decision "tantamount to a substantial policy choice." *Id.* If PBH wanted the Fourth Circuit to make this choice, it needed NCDHHS to join its efforts. *See id.* at 115.

The Court agrees *Shipman* suggests—but does not decide that—PBH could have appealed if the single State agency joined its effort. Yet this suggestion does nothing for Defendants. North Carolina structures its Medicaid program differently than West Virginia. The Tar Heel State designates its Department of Health & Human Services as the single State agency. *See* N.C. Gen. Stat. § 108A-54(a), (e). So do Maryland, Virginia, and South Carolina. *See* Md. Code Ann. Health-Gen. § 15-103(a)(1) (designating the Maryland Department of Health & Mental Hygiene); 12 Va. Admin. Code § 30-10-10(A) (designating the Virginia Department of Medical Assistance Services); S.C. Code Ann. § 44-6-30(1) (designating the South Carolina Department of Health & Human Services). These single State agencies then delegate authority to conduct fair hearings and determine eligibility questions to inferior subdivisions. *See, e.g.*, N.C. Gen. Stat. § 108A-70.9B(b) (delegating fair hearings and appeals to the NCDHHS Office of Administrative Hearings); S.C. Code Ann. Regs. § 126-152 (delegating fair hearings and appeals to the SCDHHS Office of Appeals & Hearings). In these states, *Shipman* works well. If the department believes its subdivision is not complying with "all relevant Federal and State law, regulations, and policies," 42 C.F.R. § 431.10(3)(i)(A), it can appeal the subdivision's work, *See Shipman*, 716 F.3d at 112.

West Virginia flips the script. Through its "collective wisdom and will," the West Virginia State Legislature designates BMS—a *subdivision* of DHHR—as single State agency. *State ex rel. Meadows v. Hechler*, 462 S.E.2d 586, 591 (W. Va. 1995) (quotation omitted). *See also* W. Va. Code §§ 9-1-2(n) (1998) (defining "state medical agency" as the "division of the department of health and human resources that is the federally designated single state agency with administration and supervision of the state Medicaid program"); *id.* § 9-2-13(a)(3) (2018) (defining BMS as the "single state agency for Medicaid services in West Virginia"); *id.* § 9-1-2 (2024) (defining "State

Medicaid Agency" as the "Bureau for Medical Services that is the federally designated single state agency charged with administration and supervision of the state Medicaid program").

As a result, under Defendants' reading of *Shipman*, only BMS can appeal the Board of Review's March 2023 decision. After all, BMS—not DHHR—"ensures compliance with all federal and state laws" governing Medicaid—including "the quality and accuracy of the final decisions made by the Board." State Plan at 2.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Count I.

## IV

In Count II, Forloine alleges Defendants "deprived her of her constitutional rights to procedural and substantive due process." Am. Compl. ¶ 61. The Fourteenth Amendment prohibits States from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. Due process contains both "substantive and procedural components." *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 145 (4th Cir. 2014) (quotation omitted). The Court considers each separately. Ultimately, the Court finds Forloine alleges a procedural due process claim but fails to allege a substantive due process claim.

## A

Procedural due process "prevents mistaken or unjust deprivation[.]" *Id.* at 145 (quotation omitted). To state a procedural due process claim, a plaintiff must allege (1) she has a constitutionally cognizable life, liberty, or property interest; (2) state action deprived her of that interest; and (3) the procedures used for the deprivation were constitutionally inadequate. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013).

Admittedly, Forloine's procedural due process claim is unique. Still, the Court finds she states a claim for relief—at least at this stage. She alleges she has a "legal entitlement to, and a

protected property interest in, Medicaid benefits to cover the three surgeries scheduled for September 2023." Am. Compl. ¶ 60. Despite this property interest, Defendants appealed the Board of Review's March 2023 decision and refused to reimburse her for the surgeries. *See id.* ¶¶ 56, 61–62. Because Defendants' actions violate federal law and (through extension) the Supremacy Clause, they are "constitutionally inadequate." *Sansotta*, 724 F.3d at 540.

Defendants make three arguments for dismissal. None persuade.

## 1

Start with Aetna. It argues Medicaid benefits are property only if the recipient "is in fact qualified to receive them." Aetna Mem. at 17 (emphasized removed). Because Forloine is seeking "new benefits . . . decidedly contested by the State," she has no constitutionally cognizable property interest. *Id.* Aetna forgets *Fain v. Crouch*, 618 F. Supp. 3d 313 (S.D. W. Va. 2022).

In *Fain*, this Court held when a transgender applicant with a gender dysphoria diagnosis establishes the medical necessity of a procedure, the State may not deny Medicaid coverage for the procedure. *See id.* at 325. Doing so implicates the Equal Protection Clause, *see id.*, the Affordable Care Act, *see id.* at 330–31, and the Medicaid Act, *see id.* at 332–33 (availability requirement); *id.* at 333–34 (comparability requirement).

The Board of Review faithfully applied *Fain*. The Board looked to whether Forloine established the medical necessity of three surgeries. After reviewing records from her medical professionals, the Board found she did. *See* Am. Compl., Ex. 5 at 5 (finding Forloine "established the medical necessity of the surgical procedures [f]rontal cranioplasty, [h]airline advancement, and [o]rbital rim recontouring to treat her gender dysphoria."). The Board also found BMS Provider Manual Chapter Chapter 519.24.3 did not exclude the three procedures. *See id.* (finding no basis for "expanding the non-covered services" to medically necessary procedures designed to treat

gender dysphoria). As a result, the Board held the State (and by extension Aetna) could not deny coverage for the three procedures. *See id.* at 5 ("The decision to deny [Forloine] the remaining request surgical procedures cannot be affirmed."). So long as the procedures contain an "element of medical necessity," *id.*, the Board insisted, they must be covered, *see Fain*, 618 F. Supp. 3d at 332–33 (refusing to caveat or qualify its "medical necessity" holding).

All told, the Board—following *Fain*—"conclusively determined" Forloine qualified for the three requested procedures. *Forloine*, 2023 WL 5944294 at *9. As such, the State (and by extension Aetna) must cover the procedures. *See Beal v. Doe*, 432 U.S. 438, 444 (1977) (explaining "serious statutory questions might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage"). *See also Alvarez v. Betlach*, 572 F. App'x 519, 521 (9th Cir. 2014) (discussing that states are prohibited "from denying coverage of 'medically necessary' services that fall under a category covered in their Medicaid plans") (quoting *Beal*, 432 U.S. at 444); *Bontrager v. Ind. Fam.   Soc. Servs. Admin.*, 697 F.3d 604, 608 (7th Cir. 2012) ("[T]he State is required to provide Medicaid coverage for medically necessary in those service areas that the State opts to provide such coverage.").[7]

## 2

DHHR fares no better. It argues Forloine fails to cite any "process" she should have received. *See* State Mem. at 15–16. DHHR attacks a straw man. Forloine does not allege she should

---

[7] Aetna insists the Board should have remanded the case to it to determine medical necessity because the Board decided only whether the three surgeries could be denied for "cosmetic reasons." Aetna Mem. at 15. Aetna is mistaken. Yes, the Board concluded Aetna could not "deny coverage for these procedures as cosmetic." Am. Compl., Ex. 5 at 5. But the Court does not parse administrative opinions with the same exactitude afforded statutes. *Cf. Brown v. Davenport*, 596 U.S. 118, 141 (2022) (stressing "'the language of an opinion is not always to be parsed as though we were dealing with [the] language of a statute.'") (quotation omitted). Neither should Aetna. In its decision, the Board repeatedly emphasizes Forloine established the medical necessity of three procedures. As a result, Aetna could not deny coverage for them. *See, e.g.*, Am. Compl., Ex. 5 at 4. Nothing remains "as-yet undecided." Aetna Mem. at 15.

have received *more* process to protect her Medicaid benefits. She claims DHHR subjected her to *too much* (unlawful) process. She alleges DHHR promised the Secretary of Health & Human Services it would abide by federal requirements—including the single State agency requirement. *See* Am. Compl. ¶¶ 9, 12. DHHR disregarded this promise when it used an unlawful appeal, *see supra* Part I, to steal her victory from the Board of Review, *see* Am. Compl. ¶ 50. Because DHHR failed to adhere to rules, regulations, or mandated standards established by *federal* law, her claim implicates the *federal* Due Process Claim. *Contrast Riccio v. Contrast Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("[A] state's failure to abide by its own law as to procedural protections is not a federal due process issue.").

### 3

Out of luck by themselves, Aetna and DHHR join forces. Both argue the three awarded surgeries are not "covered services" under the State Medicaid Plan and Forloine had no right to even seek a fair hearing before the Board of Review. *See* State Mem. at 17–19; State Amend Opp'n at 11–14; Aetna Mem. at 14–15. As a result, Forloine cannot base a procedural due process claim on them. *See id.* at 15; State Mem. at 19; State Amend Opp'n at 14. The Court rejected this argument at the preliminary injunction stage. *See Forloine*, 2023 WL 5944294 at *8–*9. It stands by its previous conclusions and adopts them here. *See id.*

### B

Substantive due process prevents government actors from abusing their power or employing it as "an instrument of oppression." *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 196 (1989). Proving a specific government act—like an appeal—violates substantive due process is, however, difficult. Generally, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Cnty. of Sacramento v. Lewis*, 523 U.S.

833, 846 (1998) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)). In other words, "a violation of an individual's substantive due process rights exists only when the official action is 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscious.'" *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 80 (4th Cir. 2016) (quoting *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999). *See also Lewis*, 523 U.S. at 846–47 (reviewing cases).

Forloine alleges DHHR's appeal and Aetna's refusal to provide reimbursements "arbitrarily and capriciously" injured her. Am. Compl. ¶ 12. This legal statement is conclusory. The Court need not accept it as true. *See Iqbal*, 556 U.S. at 678. Nor should it. At most, Forloine suggests Defendants took an unlawful appeal. But substantive due process is not triggered by "merely unsound or erroneous government decisions." *Valle v. Commonwealth of Puerto Rico*, 661 F. Supp. 2d 155, 185 (D.P.R. 2009). The appeal may be unwise and illegal. But there is a difference between "simply illegal" conduct and "egregious" conduct. *United States v. Getto*, 729 F.3d 221, 228 (2d Cir. 2013) ("[C]onduct does not shock the judicial conscience when it is 'simply illegal,' rather, it must be 'egregious'") (quotation omitted). The Court finds DHHR's appeal—even if unlawful—does not cross this line.

\* \* \*

In sum, Forloine states a plausible procedural due process claim. She does not state a substantive due process claim. Accordingly, the Court **GRANTS IN PART** Defendants' Motions to Dismiss as to Count II. The Court **DISMISSES** Count II to the extent it alleges a substantive due process claim.

## V

In Count III, Forloine asserts an Equal Protection Clause claim. *See* Am. Compl. ¶¶ 63–67. She alleges DHHR took the "previously unheard-of step of asking a state court to overturn" a

Board of Review Medicaid eligibility determination because she is transgender and the services approved relate to gender dysphoria. *Id.* ¶ 64. She alleges Aetna refuses to pay for the September 2023 surgeries for the same reasons. *See id.* ¶ 65. She alleges these decisions constitute "invidious discrimination." *Id.* ¶ 66. The Court finds these allegations state a plausible claim for relief.

Equal Protection Clause jurisprudence typically centers on governmental classifications that "affect some groups of citizens differently than others." *McGowan v. Maryland*, 336 U.S. 420, 425 (1961). In these cases, plaintiffs allege they are arbitrarily classified as member of an "identifiable group." *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Count III differs from this typical case. It alleges Forloine is the *only* person to suffer from an unlawful DHHR appeal. *See* Am. Compl. ¶ 64 (asserting Defendants took the "previously unheard-of-step" of appealing a Board of Review Medicaid decision). She is a "class of one."

Fortunately, the Equal Protection Clause still protects "class of one" plaintiffs from being "intentionally treated differently from others similarly situated" without a "rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Forloine's complaint fits this mold. Her complaint can "fairly be construed," *id.* at 565, as alleging Defendants routinely abide by Board of Review Medicaid decisions and reimburse patients for medically necessary surgeries, *see* Am. Compl. ¶ 63. Unfortunately, Defendants singled Forloine out. They appealed her Board decision only because of her protected transgender status and because the surgeries helped transgender patients. *See id.* ¶¶ 64–65. Simply put, Forloine alleges Defendants acted "irrational[ly] and wholly arbitrar[ily]." *Olech*, 528 U.S. at 565.

DHHR disagrees. It makes two arguments. Neither succeeds. *First*, it stresses Forloine fails to allege individuals similarly situated to her. *See* State Mem. at 23–24; State Amend Opp'n at 19. This ignores the Amended Complaint. Paragraphs 62 and 63 reference two groups: Medicaid

recipients with favorable decisions from the Board of Review *and* Forloine. Sure, Forloine is a class of one. But the "number of individuals in a class is immaterial for equal protection" purposes. *Olech*, 528 U.S. at 564 n*. What matters is Forloine alleges she would be in the first group but for the irrational and arbitrary conduct of Defendants. *See id.* ¶ 64.

*Second*, DHHR argues its decision to appeal the Board of Review's March 2023 decision satisfies rational basis review. *See* State Mem. at 24–25; State Amend Opp'n at 19–20. They cite three rationales: (1) state law authorizes DHHR's appeal; (2) the BMS Policy Manual does not cover Forloine's requested surgeries; and (3) Plaintiff had no right to a fair hearing. None of these justifications satisfy rational basis review. *See supra* Part II.C.2 (rejecting state law argument); IV.A.3 (rejecting BMS Policy Manual and fair hearing arguments).

Accordingly, the Court **DENIES** Defendants' Motions to Dismiss Count III.

## VI

In Count IV, Forloine asserts a claim for intentional discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.*, against DHHR. *See* Am. Compl. ¶¶ 68–77; Pl.'s Amend Resp. at 3 (clarifying Count IV is asserted "solely" against DHHR).

To state an ADA claim, a plaintiff must allege she has a disability, she is qualified to receive the benefits sought, and defendants denied her benefits or discriminated against her on the basis of her disability. *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016).

Forloine satisfies these elements. She alleges she suffers from gender dysphoria—a disability under the ADA. *See* Am. Compl. ¶¶ 7, 73. *See also Williams v. Kincaid*, 45 F.4th 759, 769–70 (4th Cir. 2022) (holding gender dysphoria is a disability for ADA purposes). She alleges she qualifies for three medically necessary surgeries to treat her gender dysphoria. *See* Am. Compl. ¶¶ 41–42, 69–70. She alleges Defendants appealed the Board of Review's March 2023 decision

and refused to reimburse her surgeries "because of the nature of [her] disability." *Id.* ¶¶ 69–70. At this stage, nothing more is required.

DHHR disagrees. It argues Forloine fails to identify discriminatory actions. *See* Def.'s Amend Opp'n at 22–23. Yet Forloine alleges DHHR refused to implement the Board of Review's Medicaid decision. *See* Am. Compl. ¶¶ 49–53. She alleges DHHR took unprecedented action when it appealed the Board's Medicaid decision to the West Virginia Intermediate Court of Appeals. *Id.* ¶ 69. DHHR "continues to challenge her qualification for Medicaid benefits for non-covered services." State Amend Opp'n at 23. Behind these decisions, Forloine alleges, rests discrimination against her disability. *See* Am. Compl. ¶ 69. These allegations suffice at this stage.

DHHR believes its appeal is "not illegal" because DHHR appeals Board of Review decisions unrelated to transgender Medicaid beneficiaries. State Amend Opp'n at 23. So what? Whether DHHR can appeal Board of Review decisions *unrelated* to transgender Medicaid beneficiaries is irrelevant to whether DHHR can appeal Board of Review decisions *related* to transgender Medicaid beneficiaries. Indeed, Forloine plausibly alleges federal law says DHHR cannot appeal Board of Review decisions like hers. *See supra* Part II.[8]

Accordingly, the Court **DENIES** Defendants' Motions to Dismiss Count IV.

## CONCLUSION

The Court **GRANTS** Plaintiff's Motion to Amend. The Court **DIRECTS** the Clerk to file ECF No. 71-1 ("Verified First Amended Complaint for Preliminary and Permanent Injunctive Relief and for Damages") as the operative Amended Complaint.

---

[8] DHHR invokes qualified immunity. *See* State Amend Opp'n at 23–25. This argument is meritless. Forloine sues Defendants in their official capacities. Qualified immunity is "not available in an official-capacity suit brought against a government entity or a government officer as that entity's agent." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006).

The Court **GRANTS IN PART**, **DENIES IN PART** Defendants' Motions to Dismiss. The Court **DISMISSES** Count II to the extent it pleads a substantive due process claim.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:          March 27, 2024

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE